```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                          :
UNITED STATES OF AMERICA,                 :    CASE NO. 1:06-CR-200
                                          :
       Plaintiff,                         :
                                          :
vs.                                       :    OPINION & ORDER
                                          :    [Resolving Doc. No. 129 ]
DAMON E. ALEXANDER, JR.,                  :
                                          :
       Defendant.                         :
                                          :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Damon Alexander ("Alexander") moves for an order releasing him on bond pending the resolution of his direct appeal. [Doc. 129.] For the following reasons, the Court **DENIES** Defendant's motion for release on bond.

## I. Background

On December 7, 2006, Defendant Alexander pled guilty to conspiracy to possess with the intent to distribute cocaine, possession with the intent to distribute cocaine, possession with the intent to distribute cocaine base, and being a felon in possession of a firearm. [Doc. 94.] On February 15, 2007, this Court sentenced Defendant to 110 months of imprisonment. [Doc. 111.] Since sentencing, Defendant Alexander has been in custody. On February 23, 2007, Defendant filed a notice of appeal to the Sixth Circuit Court of Appeals. [Doc. 116.] With this instant motion, Defendant asks the Court for an order releasing him on bond pending the resolution of his appeal.

Case No. 1:06-CR-200
Gwin, J.

[Doc. 129.]  The Government opposes the motion.  [Doc. 131.]

## II. Legal Analysis

The Bail Reform Act of 1984, codified at 18 U.S.C. § 3143(b), permits a defendant's release pending appeal if the Court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
>      (i) reversal,
>      (ii) an order for a new trial,
>      (iii) a sentence that does not include a term of imprisonment, or
>      (iv) a reduced sentence to a term of imprisonment less than the total
>      of the time already served plus the expected duration of the appeal
>      process.

18 U.S.C. § 3143(b).  *See United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985). Paragraph (2) of § 3143(b) also provides that a defendant found guilty of an offense described in 18 U.S.C. § 3142(f)(1)(C) shall "be detained."  Defendant Alexander was convicted of such an offense under the Controlled Substances Act.  However, § 3145(c) establishes an exception to the rule in § 3143(b)(2).  The exception enables individuals who have met the conditions for release outlined in § 3143(a)(1) or (b)(1) to be released for "exceptional reasons."  18 U.S.C. § 3145(c).

The Sixth Circuit has noted that the Bail Reform Act creates a presumption against release pending appeal.  *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988).  A sentencing court may choose to grant a defendant's motion for release on bond pending appeal under 18 U.S.C. § 3143(b)(1) and (b)(2), so long as (1) the court is satisfied that the defendant does not present a risk

Case No. 1:06-CR-200
Gwin, J.

of flight or danger to the public, (2) the defendant presents a substantial question on appeal, and (3) the defendant shows "exceptional reasons" why detention is not appropriate. § 3143(b)(1); § 3143(b)(2). The defendant must prove that he does not present such risks by clear and convincing evidence. *Id.*

### III. Discussion

*A. Risk of Flight or Danger to the Public*

The first factor that the court must consider in deciding whether to order Defendant's release on bond pending his appeal is whether Defendant is "likely to flee or pose a danger to the safety of any other person or the community" if he is released on bond. 18 U.S.C. § 3143(b)(1)(A). Under this standard, the Court is persuaded that Defendant Alexander is not a flight risk and does not pose a substantial danger to the public. Defendant followed all of the conditions of his bond during the year-long period between his arrest and reporting to prison after sentencing. Defendant attended all hearings, remained in touch with his attorney, broke no state or federal laws, tested negative for drug use, and voluntarily self-reported to prison after sentencing. Despite his criminal record, Defendant Alexander has behaved responsibly since his initial arrest on April 6, 2006. Furthermore, Defendant has lived in the Cleveland area for over forty years and his mother and wife both live in Shaker Heights, Ohio, so his risk of flight from the area is minimal. The Court is satisfied that Defendant does not pose a significant risk of flight or danger to the community.

*B. Substantial Question on Appeal*

The second inquiry in which the Court must address asks whether the appeal is "brought for the purpose of delay" and whether it "raises a substantial question of law or fact likely to result" in

Case No. 1:06-CR-200
Gwin, J.

either reversal, an order for a new trial, or a sentence reduction. 18 U.S.C. § 3143(b)(1)(B). The defendant must demonstrate that his appeal raises a "close question or one that could go either way," the resolution of which "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F. 2d 1177, 1182 (6th Cir. 1985) (internal quotations omitted). While satisfied that the Defendant's appeal is not brought for delay, the Court finds that the Defendant's appeal does not raise a substantial question that is likely to result in reversal.

Defendant Alexander's main issue on appeal involves the court order denying his motion to suppress evidence. [Doc. 83.] On October 27, 2006, Defendant Alexander moved this Court to suppress evidence of illegal drug activity seized by the police consequent to their execution of a valid search warrant, but after they coerced Defendant Alexander's cooperation in effecting the search. [Doc. 57, 83.] The Court found that, while Detective Ansari and other members of the search team violated Defendant's Fifth Amendment right against self-incrimination, the evidence was still admissible under the inevitable discovery exception to the Exclusionary Rule. *Id.* Defendant Alexander argues that the issue of whether the inevitable discovery exception to the Exclusionary Rule can be used in a situation where police intentionally obtain evidence by using excess force against a suspect until he confesses is a substantial, unsettled legal question on which the Sixth Circuit is likely to reverse this Court's decision.

At the outset, the Court acknowledges that case law on the specific legal question, particularly within the Sixth Circuit, is sparse. Very few cases have addressed the relevance of the severity of governmental misconduct in determining whether the inevitable discovery doctrine can

-4-

Case No. 1:06-CR-200
Gwin, J.

be used to admit otherwise improperly seized evidence. To that extent, Defendant's arguments do raise a substantial legal question. However, this Court is satisfied that, based upon existing Sixth Circuit case law, its decision to allow the seized evidence under the inevitable discovery doctrine will not be reversed.

The Exclusionary Rule enables a court to suppress evidence obtained as the result of an unconstitutional search or seizure. However, the "inevitable discovery" exception to the Exclusionary Rule admits otherwise unlawfully obtained evidence if the government would have eventually discovered the evidence during the course of its search. *Nix v. Williams,* 467 U.S. 431, 444 (1984). The exception applies "when the government can establish either the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Kennedy,* 61 F.3d 494, 499 (6th Cir. 1995).

The Sixth Circuit has adopted a three-part test to evaluate the admissibility of illegally seized evidence under the inevitable discovery exception. *United States v. Buchanan,* 904 F.2d 349, 356-57 (6th Cir. 1990) (internal quotations omitted). The *Buchanan* test instructs the district court to consider the "reasonable probability" that the evidence would have been discovered legally without the police misconduct, the police leads that made the discovery inevitable at the time that the misconduct occurred, and the "active pursuit" or investigation by the police prior to the alleged misconduct. *Id.*

The Sixth Circuit has held that, as long as the police possess a valid search warrant, the inevitable discovery exception applies to evidence seized without a *Miranda* warning and after

Case No. 1:06-CR-200
Gwin, J.

police coercion. *See United States v. Norman,* No. 95-4225, 1997 U.S. App. LEXIS 13122 (6th Cir. June 2, 1997); *Kennedy*, 61 F.3d at 499. *See also United States v. Charbonneau,* 979 F.Supp. 1177, 1187 (S.D. Ohio 1997). Recently, the Sixth Circuit explained its position on the applicability of the inevitable discovery exception by noting that the doctrine "applies whenever there are 'compelling facts establishing that the disputed evidence inevitably would have been discovered.' More specifically, the doctrine applies where the facts indicate that the officers inevitably would have discovered and seized the tainted evidence by following 'routine procedures.'" *U.S. v. Garcia,* No. 03-2152, 2007 WL 2254435, at *6 (6th Cir. Aug. 8, 2007) (citing *Kennedy,* 61 F.3d at 499, and *United States v. Vite-Espinoza,* 342 F.3d 462, 466 (6th Cir. 2003)).

In this case, the police had obtained and executed a valid search warrant for the Defendant's house prior to the police misconduct. Police knew that a controlled delivery of cocaine had just been made to Ansari's home. Additionally, the government claims that it had already initiated its search of the home when the Defendant was illegally coerced by Detective Ansari. The police credibly testified that, based upon their routine procedure, they would have discovered the cocaine hidden in the basement ceiling. Therefore, this Court determined that the Government met the three-part *Buchanan* test. The Government showed that the police would have discovered the cocaine legally, without the police misconduct; the police possessed leads making the discovery of the cocaine inevitable at the time that Defendant's cooperation was illegally coerced; and the search was already underway at the time of the police misconduct.

The Defendant relies heavily on cases from the First Circuit and a Massachusetts district court to support his claim that the evidence should have been suppressed because the inevitable

-6-

Case No. 1:06-CR-200
Gwin, J.

discovery exception was inapplicable due to the severity of the police misconduct. [Doc. 129.] Based on this non-binding case law, Defendant argues that this Court's decision will "provide an incentive for police misconduct" and "significantly weaken respect for constitutional protections." *Id.* Under current Sixth Circuit law, however, the level of severity of police misconduct is not directly relevant to the applicability of the inevitable discovery doctrine. While this Court does not approve of the way in which Detective Ansari coerced the Defendant into cooperating, the Court remains convinced that the police would have discovered the seized evidence through their routine investigation pursuant to the validly obtained search warrant. This Court believes that the well-established Exclusionary Rule and the Sixth Circuit's three-pronged *Buchanan* test provide adequate constitutional protection against police misconduct. While somewhat troubled by the lack of case law on the specific issue, this Court does not believe it is likely that the Sixth Circuit will reverse the denial of Defendant's motion to suppress.

### *C. Exceptional Reasons Why Detention is Inappropriate*

In addition to the two above factors, the Defendant must also show "exceptional reasons" why detention would be inappropriate pending appeal. 18 U.S.C. § 3145(c). The Northern District of Ohio has previously noted that there is "little in the statute or legislative history to assist the Court in its determination as to what is an exceptional reason." *U.S. v. Rodriguez,* 50 F.Supp. 2d 717, 721 (N.D. Ohio 1999). However, in *Rodriguez,* the court concluded that the defendant's medical condition and family financial hardship did not rise to the level of "exceptional factors" because they were not uncommon or rare factors that would distinguish the defendant "from any one else convicted of a crime. . ." *Id.* As the Court has already noted, Defendant Alexander has behaved

-7-

Case No. 1:06-CR-200
Gwin, J.

responsibly since his arrest and does not appear to pose a substantial current risk to the community. The Court is similarly sympathetic to Defendant's argument that he needs to take care of his ailing mother. These are not, however,"exceptional reasons" that would set Defendant Alexander apart from many other incarcerated individuals and justify an order finding detention inappropriate in this case.

## IV. Conclusion

This Court concludes that, while he does not pose a flight risk or threat to the safety of the community, the Defendant is not entitled to release on bond pending appeal. Defendant's appeal does not raise a substantial question of law or fact likely to result in reversal, and Defendant has not shown exceptional reasons justifying his release from detention. For the above reasons, the Court **DENIES** Defendant's motion for release on bond pending appeal.

IT IS SO ORDERED.

Dated: September 25, 2007         s/         *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE